Case No. 23-3627

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

SOVEREIGN IÑUPIAT FOR A LIVING ARCTIC, et al.,
Plaintiffs-Appellants,

v.

BUREAU OF LAND MANAGEMENT, et al.,
Defendants-Appellees,

and

CONOCOPHILLIPS ALASKA, INC., et al.,
Intervenor-Defendants-Appellees.

---

On Appeal from the United States District Court
for the District of Alaska

Case No: 3:23-cv-00058-SLG

---

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

**(RELIEF REQUESTED BY DECEMBER 20, 2023)**

---

Bridget Psarianos (AK Bar No. 1705025)
Suzanne Bostrom (AK Bar No. 1011068)
Brook Brisson (AK Bar No. 0905013)
TRUSTEES FOR ALASKA
121 W. Fireweed Lane, Suite 105
Anchorage, AK 99503

Phone: (907) 276-4244
Fax: (907) 276-7110
bpsarianos@trustees.org
sbostrom@trustees.org
bbrisson@trustees.org

*Counsel for Plaintiffs-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiffs-Appellants Sovereign Iñupiat for a Living Arctic, Alaska Wilderness League, Environment America, Northern Alaska Environmental Center, Sierra Club, and The Wilderness Society state that they have no parent companies, subsidiaries, or affiliates that have issued shares to the public in the United States and that no publicly held corporation owns 10% or more of their stocks because they have never issued any stock or other security.

# TABLE OF CONTENTS


CORPORATE DISCLOSURE STATEMENT ..................................................... ii
TABLE OF CONTENTS ........................................................................ iii
TABLE OF AUTHORITIES ..................................................................... iv
TABLE OF EXHIBITS ........................................................................... vii
INTRODUCTION .................................................................................... 1
BACKGROUND ...................................................................................... 2
LEGAL STANDARDS ............................................................................. 5
ARGUMENT ........................................................................................... 6

- I. SILA WILL SUFFER IRREPARABLE HARM. ........................................ 6
- II. SILA IS LIKELY TO SUCCEED ON THE MERITS OF ITS NEPA AND NPRPA CLAIMS. ........................................................................ 13
- III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR AN INJUNCTION. ..................................................................... 19
- IV. NO BOND SHOULD BE REQUIRED. .................................................... 25

CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*
67 F.3d 723 (9th Cir. 1995) .......... 13
*All. For The Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .......... 6, 12, 13
*Native Ecosystems Council v. Kruger*,
35 F. Supp. 3d 1259 (D. Mont. 2014) .......... 19
*Amoco Prod. Co. v. Vill. of Gambell*,
480 U.S. 531 (1987) .......... 7, 23
*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943) .......... 24
*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) .......... 13
*California v. Block*,
690 F.2d 753 (9th Cir. 1982) .......... 19
*City of Oakland v. Holder*,
961 F. Supp. 2d 1005 (N.D. Cal. 2013) .......... 19
*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) .......... 20, 23
*Env't Prot. Info. Ctr. v. Carlson*,
968 F.3d 985 (9th Cir. 2020) .......... 12
*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
528 U.S. 167 (2000) .......... 7
*Friends of Yosemite Valley v. Kempthorne*,
520 F.3d 1024 (9th Cir. 2008) .......... 13
*Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*,
512 F.3d 1112 (9th Cir. 2008) .......... 24
*Hilton v. Braunskill*,
481 U.S. 770 (1987) .......... 8
*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .......... 7
*Lands Council v. McNair*,
537 F.3d 981 (9th Cir. 2008) .......... 13, 20
*League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Connaughton*,
752 F.3d 755 (9th Cir. 2014) .......... 22

*M.R. v. Dreyfus*,
697 F.3d 706 (9th Cir. 2012) .......................................................................... 8
*Morongo Band of Mission Indians v. Fed. Aviation Admin.*,
161 F.3d 569 (9th Cir. 1998) ........................................................................ 14
*N. Alaska Env't Ctr. v. Hodel*,
803 F.2d 466 (9th Cir. 1986) ........................................................................ 23
*N. Alaska Env't Ctr. v. Kempthorne*,
457 F.3d 969 (9th Cir. 2006) ...................................................................16, 17
*Nat'l Parks & Conserv. Ass'n v. Babbitt,*
241 F.3d 722 (9th Cir. 2001) ........................................................................ 23
*Or. Nat'l Res. Council Fund v. Goodman*,
505 F.3d 884 (9th Cir. 2007) ........................................................................ 23
*Resources Ltd. v. Robertson*,
35 F.3d 1300 (9th Cir. 1994)......................................................................... 14
*S. Fork Band Council of W. Shoshone v. U.S. DOI*,
588 F.3d 718 (9th Cir. 2009) ................................................................... 21, 22
*Save Our Sonoran, Inc. v. Flowers*,
408 F.3d 1113 (9th Cir. 2005) ................................................................... 7, 20
*Se. Alaska Conserv. Council v. U.S. Army Corps of Eng'rs*,
472 F.3d 1097 (9th Cir. 2006) ................................................................... 5, 22
*Sierra Club v. Bosworth*,
510 F.3d 1016 (9th Cir. 2007) ...................................................................... 21
*Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt. (SILA I)*,
555 F. Supp. 3d 739 (D. Alaska 2021) ................................................... 3, 4, 15
*Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*,
2021 U.S. Dist. LEXIS 22809 (D. Alaska Feb. 6, 2021) ..................................... 3, 9
*Sovereign Inupiat for a Living Arctic v. Bureau of Land Mgmt. (SILA II)*,
2021 U.S. App. LEXIS 28468 (9th Cir. Feb. 13, 2021) ........................... 3, 9, 11
*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) ...................................................................... 24
*United States v. McIntosh*,
833 F.3d 1163 (9th Cir. 2016) ...................................................................... 21

**Statutes**

5 U.S.C. § 706 ................................................................................................ 13
16 U.S.C. § 3101 ............................................................................................. 24
16 U.S.C. § 3120 ............................................................................................. 24
42 U.S.C. § 6503 ............................................................................................. 21

42 U.S.C. § 6504 .......................................................................... 14, 16, 21
42 U.S.C. § 6506a ........................................................................ 14, 16, 21

**Other**

43 C.F.R. § 3135.2 .......................................................................... 14, 16
43 C.F.R. § 3162.3-1 ............................................................................... 16

# TABLE OF EXHIBITS

| Exhibit | Dist. Ct. Doc. # | Date | Description |
|---|---|---|---|
| 1 | ECF 23-13 | Mar. 2023 | U.S. Department of the Interior, Bureau of Land Management (BLM), Willow Master Development Plan, Record of Decision |
| 2 | ECF 23-14 | Jan. 2023 | Excerpts from BLM, Final Supplemental Environmental Impact Statement for the Willow Master Development Plan |
| 3 | ECF 23-15 | Jun. 2022 | Excerpts from BLM, Draft Supplemental Environmental Impact Statement for the Willow Master Development Plan |
| 4 | AR704797, 704837–43; ECF 63-7 | Aug. 29, 2022; Mar. 3, 2023 | Comments to BLM re Willow Master Development Plan |
| 5 | FWS_AR032380, 32513, FWS_AR032517 | Jan. 13, 2023 | Excerpts from U.S. Fish and Wildlife Service, Biological Opinion for the Willow Master Development Plan |
| 6 | ECF 98-13 | Dec. 1, 2008 | Excerpts from BLM, Supplement to the Administrative Record, ConocoPhillips Alaska, Inc. Leases |
| 7 | AR186046 | Oct. 2020 | Excerpts from BLM, Willow Master Development Plan, Record of Decision |
| 8 | ECF 1 | Mar. 14, 2023 | Complaint for Declaratory and Injunctive Relief |
| 9 | ECF 170-1 | Nov. 16, 2023 | Declaration of Bridget Psarianos |
| 10 | ECF 169 | Nov. 15, 2023 | Plaintiffs' Motion for Injunction Pending Appeal |
| 11 | ECF 169-1 | Nov. 15, 2023 | Declaration of Chad Otward Brown |
| 12 | ECF 169-2 | Nov. 15, 2023 | Declaration of Elisabeth Balster Dabney |
| 13 | ECF 169-3 | Nov. 15, 2023 | Declaration of Aaron Isherwood |

| | | | |
|---|---|---|---|
| 14 | ECF 169-4 | Nov. 15, 2023 | Declaration of Ellen Montgomery |
| 15 | ECF 169-5 | Nov. 15, 2023 | Declaration of Daniel Ritzman |
| 16 | ECF 169-6 | Nov. 15, 2023 | Declaration of Kristen Miller |
| 17 | ECF 169-7 | Nov. 15, 2023 | Declaration of Robert James Thompson |
| 18 | ECF 169-8 | Nov. 15, 2023 | Declaration of Sam Kunaknana |
| 19 | ECF 169-9 | Nov. 15, 2023 | Declaration of Siqiñiq Maupin |
| 20 | ECF 169-10 | Nov. 15, 2023 | Declaration of Benjamin Greuel |
| 21 | ECF 74 | Apr. 3, 2023 | District Court, Order re Motions for Temporary Restraining Order and Preliminary Injunction |
| 22 | USCA ECF 27 | Apr. 19, 2023 | Ninth Circuit, Order re Motions for Injunction Pending Appeal |
| 23 | ECF 141-2 | Aug. 30, 2023 | Declaration of Connor A. Dunn |
| 24 | ECF 166 | Nov. 9, 2023 | District Court, Decision & Order |
| 25 | ECF 167 | Nov. 9, 2023 | District Court, Judgment |
| 26 | ECF 168 | Nov. 14, 2023 | Notice of Appeal from Judgment of District Court |
| 27 | ECF 170-2 | Nov. 16, 2023 | Emails re: Construction Schedule (filed as Exhibit 1 to Plaintiffs' Motion to Expedite Consideration of Motion for Injunction Pending Appeal) |
| 28 | ECF 170-3T | Nov. 16, 2023 | Emails re: Construction Schedule (filed as Exhibit 2 to Plaintiffs' Motion to Expedite Consideration of Motion for Injunction Pending Appeal) |
| 29 | ECF 172 | Nov. 17, 2023 | District Court, Order re Motions to Expedite Consideration of Motions for Injunction Pending Appeal |

| | | | |
|---|---|---|---|
| 30 | ECF 177-11 | Nov. 28, 2023 | Second Declaration of Connor A. Dunn |
| 31 | ECF 177-12 | Nov. 28, 2023 | Second Declaration of James I. Brodie |
| 32 | ECF 188 | Dec. 1, 2023 | District Court, Order re Motions for Injunction Pending Appeal |

## INTRODUCTION

Appellants Sovereign Iñupiat for a Living Arctic et al. (collectively SILA) seek emergency injunctive relief to avoid the imminent, irreparable destruction of Arctic wetlands and tundra, and harms to wildlife and people, caused by ConocoPhillips Alaska, Inc.'s (ConocoPhillips) construction of the Willow Master Development Project (Willow). Beginning on December 21, 2023, ConocoPhillips plans to conduct extensive construction and gravel mining activities that will permanently alter the region by building a significant portion of the project's gravel infrastructure. Indeed, ConocoPhillips states that "[a] very substantial level of activity is planned." Ex. 30 ¶ 9. The company plans to build 7–8 miles of gravel roads, the airstrip, one bridge over an important subsistence river, the 30+-acre Willow operations center pad, the 22+-acre Willow central processing facility pad, open a new gravel mine, and do further gravel mining at an existing site. *Id.* The damage from the construction of this gravel infrastructure will be permanent. As a result, irreparable harm to the lands, waters, subsistence resources and users, and other values within the National Petroleum Reserve–Alaska (Reserve) is imminent.

SILA is likely to succeed on the merits of its claim that the U.S. Bureau of Land Management (BLM) violated the National Environmental Policy Act (NEPA) and the Naval Petroleum Reserves Production Act (NPRPA) when approving Willow because it failed to consider an alternative that would allow for

less than full-field development of ConocoPhillips' leases. The balance of equities and public interest also favor an injunction to ensure the environmental *status quo* is maintained while this Court considers SILA's appeal. SILA, therefore, respectfully requests this Court enjoin Defendants' approvals of Willow during the appeal and expedite its ruling on this motion.

## BACKGROUND

Stretching across the Western Arctic, from the Chukchi and Beaufort Seas to the foothills of the Brooks Range, the Reserve provides rich habitat for wildlife, including two caribou herds that are important for numerous communities. It is a mosaic of tundra wetlands. Ex. 2 at 16–18. The Ublutuoch River and Fish Creek, which will be impacted by Willow, are significant coastal rivers important for subsistence. *Id.* at 26, 28–29.

Willow is an extensive oil and gas project. When complete, it will cause the direct, permanent loss of hundreds of acres of wetlands from fill and excavation, with thousands of acres of impacts extending beyond the development footprint. *Id.* at 8–9, 19. As originally proposed in 2018, Willow would include a spiderweb of gravel roads, a central processing facility, up to five drill pads, an airstrip, 300+ miles of pipelines, and bridges over important subsistence waterways. *Id*. at 1. Willow also includes two gravel mines adjacent to the Ublutuoch River. *Id.* at 4. The project would require waivers of previously established river setbacks

intended to protect subsistence and would place infrastructure and allow other activities in the Reserve's designated Special Areas. *Id.* at 7, 27.

BLM authorized Willow for the first time in January 2021. *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.* (*SILA I*), 555 F. Supp. 3d 739 (D. Alaska 2021). SILA challenged those approvals and obtained injunctive relief from this Court to preclude winter construction while the case was pending. *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.* (*SILA II*), 2021 U.S. App. LEXIS 28468 (9th Cir. Feb. 13, 2021); *see also Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 2021 U.S. Dist. LEXIS 22809 (D. Alaska Feb. 6, 2021) (recognizing construction of permanent gravel roads and infrastructure would cause irreparable harm). In August 2021, the District Court vacated the environmental impact statement (EIS) and project approvals due to critical flaws in the agencies' analyses, including the failure to consider a reasonable range of alternatives. *SILA I*, 555 F. Supp. 3d at 804–05.

On remand, BLM prepared a supplemental EIS (SEIS), which considered only one new alternative: Alternative E. Ex. 3 at 1. Alternative E included four drill sites instead of five; it eliminated the drill site within the Teshekpuk Lake Special Area (TLSA) and deferred approval of another drill site. *Id.* at 2. Alternative E otherwise largely included the same infrastructure, mitigation, and

design features as ConocoPhillips' original proposal, *id.*, as depicted below:




Ex. 2 at 56.

In February, BLM released its final SEIS. The final SEIS suffered from the same flaws as the draft, including failing to consider reasonable alternatives that would provide for anything less than full-field development on ConocoPhillips' leases. BLM ultimately adopted Alternative E with additional modifications. Ex. 1 at 11. BLM approved drill sites at Bear Tooth (BT) 1, BT2, and BT3, but purported to disapprove rather than defer BT5. *Id.* at 11–12.

SILA filed a lawsuit challenging BLM's approvals. Ex. 8. SILA also sought

to halt three weeks of winter construction activities pending resolution of its case on the merits. However, the District Court and this Court denied SILA's motions for a preliminary injunction. Ex. 21; Ex. 22. As a result, ConocoPhillips completed limited construction activities during April 2023. Ex. 23 ¶ 3.

Following merits briefing, the District Court denied SILA's motion for summary judgment and issued its judgment on November 9, 2023. *See generally* Ex. 24; Ex. 25. SILA promptly moved for an injunction pending appeal, Ex. 10, which the District Court denied on December 1, 2023. Ex. 32.

ConocoPhillips' upcoming construction activities would be far more extensive than those last April, with activities beginning December 21, 2023 and extending into the spring and summer. Ex. 31 ¶¶ 5–6; Ex. 30 ¶¶ 3, 9. Upcoming construction would result in ConocoPhillips building a significant amount of Willow's permanent infrastructure. Ex. 30 ¶ 9; Ex. 31 ¶ 6.

## LEGAL STANDARDS

To obtain an injunction pending appeal, Plaintiffs must establish: (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *See Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006). Plaintiffs can obtain an injunction by showing "serious questions going to the merits … and the balance of hardships

tips sharply in [their] favor" provided the other factors are met. *All. for Wild Rockies v. Cottrell* (*Alliance*), 632 F.3d 1127, 1131 (9th Cir. 2011). The standard for showing that serious questions exist is a lower bar than demonstrating likely success on the merits. *Id.*

## ARGUMENT

### I. SILA WILL SUFFER IRREPARABLE HARM FROM CONOCOPHILLIPS' EXTENSIVE CONSTRUCTION ACTIVITIES AND INFRASTRUCTURE.

ConocoPhillips plans to build a significant portion of Willow's gravel infrastructure in the coming months. Ex. 31 ¶¶ 6, 9–10. Its activities will include further developing one gravel mine, opening an additional gravel mine using explosives to remove tundra and soil layers, excavating gravel on 70+ acres, and placing gravel for 7–8 miles of permanent roads, the main airstrip, and two major operational hubs — the 30+-acre operations center pad and the 22+-acre central processing facility pad.[1] Ex. 30 ¶ 9; Ex. 31 ¶¶ 6, 9–10 ; *see also* Ex. 1 at 13–14 (generally describing project). ConocoPhillips further plans to install a bridge and miles of pipeline infrastructure. Ex. 30 ¶ 9. Ground-disturbing construction would begin on December 21, 2023, and will last into the spring and summer. Ex. 30 ¶ 7,

[1] While ConocoPhillips' activities this winter are undisputedly at issue, SILA may be further harmed from ConocoPhillips' extensive 2024–2025 activities, depending upon the Court's timeframe for resolving SILA's appeal. *See* Ex. 30 ¶ 12 (explaining "an even higher level of work" is planned for winter 2024–2025).

9. This infrastructure would remain in place for decades, and some would likely remain forever. SILA's members and supporters face imminent, irreparable harm from this infrastructure;[2] the damage from gravel mining and gravel infrastructure will be permanent once it occurs. *Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, … is often permanent or at least of long duration, *i.e.*, irreparable."); *see also Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1124 (9th Cir. 2005) ("[O]nce the desert is disturbed, it can never be restored.").

Last winter, because ConocoPhillips had only a very limited construction season, it opened one gravel mine site and built two miles of gravel road. Ex. 23 ¶ 3. The "very substantial" construction planned to begin on December 21st is significantly broader in scope and will be far more impactful than the construction last winter. *Compare* Ex. 30 ¶¶ 7, 9, *with* Ex. 21 at 18–19, 24; *see also* Ex. 21 at 29 (recognizing "the Willow Project in its entirety would have a large environmental impact," but stating that the court was only considering 21 days of construction).

The District Court misapplied the standard in finding there would not be harm to SILA. First, the District Court applied the wrong legal standard when

[2] Because of these harms, SILA has standing. *See Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*, 528 U.S. 167, 180–81 (2000) & *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 341–45 (1977) (standing test); *see also* Exs. 11–20 (declarations describing interests and harm).

concluding that SILA failed to demonstrate irreparable harm because a majority of subsistence users in Nuiqsut may not be impacted. Ex. 32 at 14 (noting 23–47% of subsistence users avoid development). SILA must only demonstrate harm to its individual members, not to a broader class or majority of users. *See Hilton v. Braunskill*, 481 U.S. 770, 776–77 (1987); *M.R. v Dreyfus*, 697 F.3d 706, 729–32 (9th Cir. 2012) (indicating demonstrating challenged action individually impacts plaintiffs is sufficient).

SILA's members and supporters demonstrated irreparable harm to their individual interests from this winter's activities. Sam Kunaknana relies heavily on subsistence hunting and fishing, and he hunts and fishes in the vicinity of Willow's roads, pads, and pipelines. Ex. 18 ¶¶ 7–9. Mr. Kunaknana explains that his ability to hunt and fish in the area he currently relies on, including Fish Creek, Judy Creek, and the Ublutuoch River, will be irreparably harmed by Willow's infrastructure. Ex. 18 ¶¶ 9–10, 18, 27–28, 35. He fishes at, and downstream of, the location of Willow's gravel mine on the Ublutuoch River. Ex. 18 ¶ 10. ConocoPhillips plans to expand this gravel mine, and construct gravel roads, multiple gravel pads, and pipelines throughout Mr. Kunaknana's subsistence-use areas. Ex. 31 ¶¶ 6, 9–10; *see also* Ex. 2 at 56 (map showing Willow's gravel roads and bridges crossing Fish and Judy Creek, gravel mines, the Willow central

processing facility, airstrip, and operations pad adjacent to Fish Creek).

Mr. Kunaknana's identity and way of life as an Iñupiat are inextricably tied to his ability to hunt and fish in the remaining infrastructure-free areas around his home. Ex. 18 ¶¶ 11–14, 16–17, 20–22, 25–26, 32. As he explains, he has already experienced negative impacts from oil and gas infrastructure cutting through his traditional hunting and fishing areas. Ex. 18 ¶ 16. Permanently building a significant portion of Willow's infrastructure during this appeal will cause him irreparable harm by permanently converting areas that are important to him into industrial zones where he can no longer hunt and fish. Ex. 18 ¶¶ 16–18, 20, 27, 32; Ex. 31 ¶¶ 9–10.[3]

Contrary to the District Court's characterization of Mr. Kunaknana's harm as "apprehensions" unrelated to ConocoPhillips's construction activities, Ex. 32 at 12, BLM's analysis confirms that Willow would cause the irreparable impacts Mr. Kunaknana identifies. BLM stated gravel roads have "a high potential" to disturb caribou and impact subsistence hunters, and there would be permanent losses of caribou habitat from the project. Ex. 2 at 23–25, 39. Importantly, BLM found

[3] Such impacts to subsistence use from gravel mining and construction activities were previously recognized as irreparable harm. *SILA II*, 2021 U.S. App. LEXIS 28468, at *6–7; *see also Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 2021 U.S. Dist. LEXIS 22809 (D. Alaska Feb. 6, 2021).

Willow is "likely to deflect … caribou from where Nuiqsut hunters harvest them" near the mine and the altered distribution and deflection of caribou could have "large impacts to hunter success." *Id.* at 42. BLM further found that Willow's infrastructure and construction activity may impact fish availability and increase concerns regarding contamination. *Id*. at 54–55.[4] BLM determined that Willow "would constitute a substantial restriction on subsistence access for Nuiqsut residents." *Id.* at 43. Mr. Kunaknana explained, consistent with BLM's analysis, that loss of areas where he engages in subsistence practices will be directly caused by the infrastructure ConocoPhillips would build this winter.[5] This establishes irreparable harm to his interests sufficient to warrant an injunction.

Second, the District Court improperly treated the harm resulting from ConocoPhillips' activities as ceasing at the end of the winter construction season or being limited to the construction phase. Ex. 32 at 14, 18. To be sure, SILA's members and supporters will be irreparably harmed by the significant construction activities that are scheduled to begin imminently. But it is not only construction

[4] The District Court misunderstood that harm to Mr. Kunaknana's fishing interests is because he will no longer fish in his traditional use area because of Willow. Ex. 18 ¶ 10, 32; *cf.* Ex. 32 at 12–13.

[5] As Siqiñiq Maupin similarly explains, Willow's infrastructure and activities would be within important subsistence-use areas, including for caribou, and threaten people's ability to hunt and obtain traditional foods and engage in cultural practices. Ex. 19 ¶¶ 18–24.

activities that cause harm; impacts from the infrastructure will be permanent.

Indeed, BLM acknowledged that harm to wetlands, wildlife, and subsistence use from gravel mining and road building "would be irreversible" and "permanent." Ex. 2 at 11–12, 19; *see also id.* at 20, 22 (stating gravel fill "would permanently remove or alter wetlands and wetlands functions"). BLM also explained Willow's roads and infrastructure would impact subsistence users and visitors for the project duration and would be irreversible — i.e., permanent — except to the extent of eventual reclamation. *Id.* at 13–14, 16, 23–26; *supra* p. 9–10 (acknowledging permanent harm to caribou hunters from infrastructure). The District Court erred by treating Mr. Kunaknana's harm as limited to the upcoming construction season. Ex. 32 at 14. Indeed, this Court previously found SILA "will suffer irreparable harm in the absence of an injunction" from construction impacting individuals' subsistence uses. *SILA II*, 2021 U.S. App. LEXIS 28468, at *6–7.

These permanent impacts would also harm SILA's members who recreate in the area. Daniel Ritzman explains that he has traveled to the Reserve many times to recreate and view wildlife. Ex. 15 ¶¶ 25–31, 34. This summer, he plans to float the Colville River to Nuiqsut and hike up to five miles from the river to explore the surrounding areas, including the Ublutuoch River and the area near Willow. Ex. 15

¶ 34; Ex. 2 at 56 (map depicting Colville and Ublutuoch Rivers near Willow's infrastructure). However, the construction of Willow will harm his ability to use and return to the area. Ex. 15 ¶¶ 35–38, 47.[6] The District Court improperly dismissed Mr. Ritzman's harm. Ex. 32 at 17–18.

As the Ninth Circuit has explained, "[w]hen a project may significantly degrade some human environmental factor, injunctive relief is appropriate." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 991 (9th Cir. 2020). SILA's specific allegations of irreparable harm from ConocoPhillips' construction of permanent infrastructure warrant an injunction. *Alliance*, 632 F.3d 1127, 1135 (9th Cir. 2011) (explaining harm to members' "ability to view, experience, and utilize the areas in their undisturbed state" is irreparable (internal quotation marks omitted)).

Finally, the District Court also erred by focusing on the number of acres impacted relative to the overall Reserve in finding SILA would not be impacted. Ex. 32 at 24. This is inconsistent with this Court's case law; the relevant inquiry is the irreparability of the harm to the plaintiffs, not its magnitude in relation to the landscape. *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018); *Alliance*, 632

[6] Additionally, Kaktovik resident and polar bear guide Robert Thompson explains that the activities associated with Willow, such as construction within polar bears' habitat, would result in more human-bear encounters and thus harm the population he relies on for professional guiding. Ex. 17 ¶¶ 2–4, 6–13, 16. Such impacts were acknowledged by the U.S. Fish and Wildlife Service. Ex. 5 at 2–3.

F.3d at 1135.

## II. SILA IS LIKELY TO SUCCEED ON THE MERITS OF ITS NEPA AND NPRPA CLAIMS.

SILA is likely to succeed on the merits of its appeal of the District Court's decision; at a minimum, SILA raises "serious questions" on the merits. BLM violated NEPA's core mandate to consider a reasonable range of alternatives, as well as the NPRPA's mandates to provide maximum protection for Special Areas and to protect surface resources, by improperly limiting its consideration of alternatives to only those that would not strand an economically viable quantity of oil.[7] The District Court's conclusions of law, including questions of statutory construction, are reviewed "de novo." *Lands Council v. McNair*, 537 F.3d 981, 986 (9th Cir. 2008).

Under NEPA, "[a]n agency must look at every reasonable alternative, with the range dictated by the nature and scope of the proposed action, and sufficient to permit a reasoned choice." *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1038 (9th Cir. 2008) (quoting *Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*, 67 F.3d 723, 729 (9th Cir. 1995)) (internal quotation marks omitted). "The existence of a viable but unexamined alternative renders an [EIS]

[7] SILA's claims are reviewed under the Administrative Procedure Act. 5 U.S.C. § 706(2).

inadequate." *Morongo Band of Mission Indians v. Fed. Aviation Admin.*, 161 F.3d 569, 575 (9th Cir. 1998) (quoting *Resources Ltd. v. Robertson*, 35 F.3d 1300, 1307 (9th Cir. 1994)).

The NPRPA mandates that BLM "shall include or provide for such conditions, restrictions, and prohibitions" on activities within the Reserve as necessary to protect surface resources and requires "maximum protection" of surface values in Special Areas. 42 U.S.C. §§ 6506a(b), 6504(a). This authority is extremely broad and includes the power to suspend all operations on existing leases in the interest of conservation or to mitigate adverse effects. *Id*. § 6506a(k)(2); 43 C.F.R. § 3135.2(a)(1), (3). Thus, while Congress provided for an oil and gas program, it also vested BLM with the authority and mandate to take a broad range of actions — including outright prohibitions on activities — to ensure the protection of surface resources.

In developing the SEIS, BLM eliminated alternatives based on the assumption that it must not strand economically viable quantities of recoverable oil and must allow "full development of the Willow Reservoir." Ex. 2 at 3, 51; *see* Ex. 3 at 6. BLM defined "full development" to mean it could not consider an alternative that would strand an economically viable quantity of oil — meaning, a quantity that warrants an additional drilling pad. Ex. 3 at 4; Ex. 2 at 33, 46–47.

This is inconsistent with BLM's legal authority and obligations under the NPRPA and led the agency to unlawfully constrain its range of alternatives. As a result, the agency rejected alternatives that would have kept infrastructure out of the TLSA, precluded infrastructure in important subsistence-use areas, reduced greenhouse gas emissions, or otherwise further reduced impacts. Ex. 4 at 2–8 (suggesting alternatives).

When presented with similar limitations in the prior EIS, the District Court correctly held BLM acted contrary to law by failing to consider the NPRPA's directive to provide "maximum protection" for surface values within the TLSA and by limiting its consideration of alternatives based on the erroneous belief that ConocoPhillips had the right to extract all oil and gas from its leases. *SILA I*, 555 F. Supp. 3d at 769–70. BLM repeated this legal error here by only considering alternatives that would allow for full-field development. From a practical standpoint, this limitation is the same as BLM's "view that it must allow ConocoPhillips to extract all possible oil and gas on its leases," which the District Court previously held to be unlawful. *Id.* at 770. Consistent with its own prior reasoning, the District Court should have reached the same conclusion here: the SEIS was unlawful.

Instead, the District Court concluded not only that BLM's approach was

within its discretion, but also that, after lease issuance, BLM no longer has the authority to prohibit significant impacts. Ex. 24 at 19–20. This erroneously limits BLM's authority to adopt prohibitions or other mitigation measures to only those that will still provide for full-field development. *Id.* at 20–22. Nothing in the NPRPA limits BLM's authority and mitigation obligations to only those measures that would not infringe upon full-field development. To the contrary, under the plain language of the NPRPA and its regulations, BLM may restrict and prohibit activities on existing leases, including by denying drilling permits, and it has a duty to do so when necessary to protect Special Areas. 42 U.S.C. §§ 6506a(b), 6506a(k)(2); 43 C.F.R. § 3135.2(a)(1), (3); *see id.* § 3162.3-1(h)(2). The District Court's interpretation would tie the agency's hands even where, as here, the project is likely to have significant adverse impacts to surface resources and Special Areas. Such an approach is contrary to BLM's statutory mandates. 42 U.S.C. §§ 6506a(b), 6504(a).

The District Court's decision also overstates the nature of ConocoPhillips' lease rights. Ex. 24 at 20–21. As the Ninth Circuit recognized in *Northern Alaska Environmental Center v. Kempthorne*, even after issuing leases, the government can still "condition permits for drilling on implementation of environmentally protective measures," and the Court presumed the agency could "deny a specific

application altogether if a particularly sensitive area is sought to be developed and mitigation measures are not available." 457 F.3d 969, 976 (9th Cir. 2006). The District Court's decision is directly at odds with the NPRPA's plain language and Ninth Circuit precedent concerning the agency's authority.

The terms of the leases themselves also make clear that ConocoPhillips' rights are subject to all applicable laws and regulations. Ex. 6. This includes BLM's ability to adopt prohibitions and impose mitigation measures to protect the Reserve and, as the Ninth Circuit recognized, to deny permits. *N. Alaska Env't Ctr.*, 457 F.3d at 976. The lease terms do not — and legally cannot — waive or override BLM's authority to avoid and minimize significant impacts to surface resources after issuing a lease. *See* Ex. 6 at 2.

Further, the District Court erred in its analysis of BLM's purpose and need statement. Ex. 24 at 15–16. Nothing in BLM's statement precluded the agency from considering alternatives that allow for less than full-field development by shifting infrastructure out of the TLSA or other sensitive ecosystems like the Fish Creek setback. The statement identifies dual purposes to "construct the infrastructure necessary to allow the production and transportation to market of federal oil and gas resources in the Willow reservoir" while simultaneously providing "maximum protection to significant surface resources within the

[Reserve].” Ex. 2 at 1–2. While reasonable on its face, BLM unlawfully constrained its view of its legal authority in how it interpreted and applied this statement and, in turn, improperly limited its consideration of alternatives. BLM never explained why alternatives that would reduce infrastructure or locate it outside of sensitive areas would be inconsistent with either the first purpose (generally enabling oil and gas development) or the second purpose (providing maximum protection to the Reserve’s resources). BLM’s explanation focused only on the first goal, and it transformed the general purpose of providing for oil and gas development into a mandate to ensure full-field development. Ex. 2 at 37; *see also id*. at 36. The purpose of allowing oil production and transportation cannot override BLM’s statutory obligations to provide maximum protection for areas like the TLSA.

BLM’s addition of Alternative E in the final SEIS and adoption of it as modified did not remedy this problem. All action alternatives included infrastructure in the TLSA and Colville River Special Area and presented only small variations on ConocoPhillips’ proposed project because the agency erroneously restricted the scope of alternatives it could consider. Ex. 2 at 3, 7. Even to the extent Alternative E might have slightly reduced the impacts, it does not alter the fact that BLM improperly limited the alternatives to only those

allowing for full-field development. *California v. Block*, 690 F.2d 753, 767 (9th Cir. 1982) (rejecting alternative analysis where agency "uncritically assumes that a substantial portion of the [] areas should be developed and considers only those alternatives with that end result"). That self-imposed limitation precluded BLM from considering alternatives that were meaningfully different and led the agency to adopt an alternative that reduced the oil recovered by a mere 2.45%. Ex. 1 at 22. Refusing to consider alternatives that would provide for less than full-field development was inadequate for purposes of NEPA and was inconsistent with the agency's authority and obligations under the NPRPA. *Block*, 690 F.2d at 767.

Finally, SILA has raised serious questions regarding the scope of BLM's retained authority and obligations under the NPRPA following lease issuance, and whether the agency must allow full-field development. Contrary to the District Court's assertion, Ex. 32 at 8, these are questions that the Ninth Circuit has not previously considered at the production stage. The lack of case law on these statutory questions supports issuance of an injunction to allow for appellate review. *See Native Ecosystems Council v. Kruger*, 35 F. Supp. 3d 1259, 1270 (D. Mont. 2014); *City of Oakland v. Holder*, 961 F. Supp. 2d 1005, 1012 (N.D. Cal. 2013).

### III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR AN INJUNCTION.

The balance of equities and public interest strongly favor protecting the

Reserve and SILA's members from irreparable harm while the Ninth Circuit reviews the agencies' deficient decisions.

In cases against the government, the balance of equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). Where environmental injury is sufficiently likely, the balance of equities generally favors an injunction. *Save Our Sonoran, Inc.*, 408 F.3d at 1125. The "public interest in preserving nature and avoiding irreparable environmental injury" is well-established. *Lands Council*, 537 F.3d at 1005.

ConocoPhillips' construction of extensive permanent infrastructure will irreparably harm vital habitat for fish and wildlife, including important subsistence resources, and permanently impact subsistence users by displacing them from traditional subsistence-use areas. Polar bears, caribou, and wildlife of the northeastern Reserve are resources used and enjoyed by SILA's members and supporters, as well as Alaskans and citizens across the United States.[8]

The NPRPA reflects a strong public interest in the protection of land and resources. Indeed, even though it allows for oil and gas, Congress still mandated protection of the Reserve's resources and uses. 42 U.S.C. §§ 6503(b), 6504(a),

[8] *See generally* Ex. 11 ¶¶ 18–22; Ex. 12 ¶¶ 13, 19, 22–25; Ex. 20 ¶¶ 22–23, 25–29, 31–36, 39–41; Ex. 14 ¶¶ 14–15; Ex. 16 ¶¶ 23–29, 32; Ex. 15 ¶ 39–40; Ex. 17 ¶¶ 7–11, 13, 16.

6506a(b). The District Court improperly focused only on the NPRPA's leasing program as indicative of Congress' intent to allow oil development but ignored the countervailing statutory mandates for the protection of land and resources. Ex. 32 at 26; *cf. United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016) (explaining Courts cannot ignore congressional directives and priorities).[9] For the reasons discussed above, there is a significant public interest in protecting the Reserve while this case is decided. *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033–34 (9th Cir. 2007). The Ninth Circuit also recognizes the public interest in complying with the law, rendering injunctive relief appropriate in this case. *S. Fork Band Council of W. Shoshone v. U.S. DOI* (*Shoshone*), 588 F.3d 718, 728 (9th Cir. 2009).

In determining that local jobs and revenue tipped the equities against an injunction, the District Court failed to give proper weight to the fact that these seasonal jobs will not be lost, only delayed. Ex. 32 at 21.[10] As this Court has recognized, "[b]ecause the jobs and revenue will be realized if the project is approved, the marginal harm to the intervenors of the preliminary injunction is the

[9] The District Court improperly focused on the acres of land to be impacted in relation to the entire Reserve. Ex. 32 at 24. As explained above, this is improper.

[10] The Court similarly weighed the benefit to subsistence users from the roads and boat ramps. Ex. 32 at 26. Such benefits would only be delayed, not lost, which the District Court failed to account for.

value of moving those jobs … to a future year." *League of Wilderness Defs./Blue Mountain Biodiversity Project v. Connaughton* (*Connaughton)*, 752 F.3d 755, 765–66 (9th Cir. 2014); *Shoshone*, 588 F.3d at 728 (explaining economic harm of lost employment is mostly temporary).

To the extent that the economic or energy security impacts from an injunction are considered, it is well-established that the proper scope is the timeframe that the injunction will be in place: only until the Court decides the merits of the appeal.[11] *Connaughton*, 752 F.3d at 765–66. Revenues and benefits from increased oil production would not result from this winter's construction season and will not be lost if construction is delayed. Thus, purported future economic impacts should not be considered. *See Se. Alaska Conservation Council*, 472 F.3d at 1101 ("Although the public has an economic interest in the mine, there is no reason to believe that the delay in construction activities caused by the court's injunction will reduce significantly any future economic benefit that may result from the mine's operation.").

Because these economic interests are temporary, they do not overcome the permanent harm to SILA from the imminent construction of permanent infrastructure. *See Or. Nat. Res. Council v. Goodman*, 505 F.3d 884, 898 (9th Cir.

[11] SILA anticipates pursuing a briefing schedule that allows this Court to decide the merits of SILA's appeal prior to next winter's construction season.

2007) ("[T]he risk of permanent ecological harm outweighs the temporary economic harm that [the permittee] may suffer."); *Nat'l Parks Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 (9th Cir. 2001) (finding economic injury "does not outweigh" irreparable environmental harm); *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 471 (9th Cir. 1986) (stating "[m]ore than pecuniary harm must be demonstrated" to avoid injunction).

Additionally, ConocoPhillips' economic injuries are self-inflicted business decisions that deserve no weight because the company knowingly took the risk of delay. *Drakes Bay Oyster Co.*, 747 F.3d at 1093 (explaining companies that presume permitting outcomes assume the risk). Importantly, ConocoPhillips still has not made a final investment decision for the project despite its ongoing spending, demonstrating that the economic impacts it complains of are speculative and uncertain. Ex. 10 at 18, n.71; *cf.* Ex. 31 (identifying expenditures but not confirming final investment decision).

The District Court's reliance on *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987), is misplaced because the Court in that case concluded that harm to subsistence was "not at all probable" and, therefore, the economic considerations tipped the balance. That finding stands in stark contrast to the present case. Mr. Kunaknana's subsistence use and access will be immediately

and irreparably harmed, which is confirmed by BLM's findings. *Supra* Argument Part I. Additionally, the District Court's reading of *Amoco* goes too far in implying economic injury outweighs any subsistence harm. Ex. 32 at 22–23. That is contrary to Congress' statutory mandates to protect subsistence. 16 U.S.C. §§ 3101(c), 3120(a).

The District Court also misapplied multiple cases to give "considerable weight" to the Alaska Legislature's resolution supporting Willow and the Alaska congressional members' support of the project. Ex. 32 at 24–26. Those cases involved state or local governing bodies with direct jurisdiction over the decision at issue. *See, e.g.*, *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1113, 1140 (9th Cir. 2009); *Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*, 512 F.3d 1112, 1126–27 (9th Cir. 2008); *Burford v. Sun Oil*, 319 U.S. 315, 318 (1943). Here, SILA challenges a decision made by a federal agency under federal laws concerning the management of federal land. In relying on these cases, the District Court gave improper weight to the positions of the Alaska Legislature and Alaska's congressional members. The District Court also ignored the fact that 22 members of Congress wrote to President Biden opposing Willow and urging Department of the Interior to deny permits based on subsistence and environmental concerns. Ex. 4 at 9–12.

## IV. NO BOND SHOULD BE REQUIRED.

Plaintiffs are non-profit organizations seeking to further strong public interests. Ex. 12 ¶ 27; Ex. 13 ¶¶ 4–11; Ex. 16 ¶ 34; Ex. 20 ¶ 42; Ex. 19 ¶ 28; Ex. 14 ¶ 26. As such, this Court should not require a bond. Fed. R. App. P. 8(a)(2)(E).

## CONCLUSION

This Court should grant SILA's emergency motion for an injunction pending appeal. If this Court denies SILA's motion, SILA respectfully requests the Court expedite the appeal and issue a decision prior to ConocoPhillips' 2024–2025 winter construction season.

Respectfully submitted this 4th day of December, 2023.

s/ Bridget Psarianos
Bridget Psarianos (AK Bar No. 1705025)
Suzanne Bostrom (AK Bar No. 1011068)
Brook Brisson (AK Bar No. 0905013)
TRUSTEES FOR ALASKA
121 W. Fireweed Lane, Suite 105
Anchorage, AK 99503
(907) 276-4244
bpsarianos@trustees.org
sbostrom@trustees.org
bbrisson@trustees.org

Counsel for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

I certify that:

(1) This document contains 5,552 words, excluding the items exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f). When divided by 280, the word length of this document does not exceed 20 pages, in compliance with Circuit Rules 27-1(1)(d) and 32-3(2); and

(2) This document's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6).

Signature: *s/Bridget Psarianos* Date: December 4, 2023