NOS. 23- 3627 & 23-3624

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

SOVEREIGN IÑUPIAT FOR A LIVING ARCTIC, et al.,

Plaintiffs-Appellants,

v.

BUREAU OF LAND MANAGEMENT, et, al.,

Defendant Appellees,

and

CENTER FOR BIOLOGICAL DIVERSITY, et al.,

Plaintiffs-Appellants,

v.

BUREAU OF LAND MANAGEMENT, et, al.,

Defendant Appellees

Appeals from the United States District Court for the District of Alaska
Case Nos. 3:23-cv-58 & 3:23-cv-61 (Hon. Sharon L. Gleason)

---

# THE STATE OF ALASKA'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR INJUNCTION PENDING APPEAL

STATE OF ALASKA
TREG TAYLOR
ATTORNEY GENERAL
Mary Hunter Gramling
Chief Assistant Attorney General
Alaska Bar No. 1011078
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Email: mary.gramling@alaska.gov
*Attorney for State of Alaska*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

STANDARD OF REVIEW ........................................................................3

ARGUMENT ............................................................................................5

A. The Plaintiffs fail to demonstrate irreparable harm……………………5
  1. The Plaintiffs fail to demonstrate irreparable harm to subsistence……………………………………………………5
  2. The "bureaucratic steamroller" theory fails to demonstrate irreparable harm………………………………………………………..9

B. Injunction is contrary to the balance of equities and public interest...12
  1. Injunction would cause significant economic harms to governments, communities, and private parties contrary to the public interest…………………………………………………………12
  2. Injunction is contrary to the public interest in welfare and safety………………………………………………………16
  3. Injunction is contrary to the public interest in energy security and the purposes of the Reserve…………………………………...18

CONCLUSION .........................................................................................21

# TABLE OF AUTHORITIES

## Federal Cases

*Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531 (1987) ..............................5, 14

*Earth Island Institute v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) .....................14

*Friends of Alaska Nat'l Wildlife Refuges v. Haaland*, No 20-35721, 2023 WL 4066653, (9th Cir. June 15, 2023) ..........................................................................12

*Nken v. Holder*, 556 U.S. 418 (2009). ....................................................................4

*Northern Cheyenne Tribe v. Hodel*, 851 F.2d 1152 (9th Cir. 1988) ................10, 11

.*Southeast Alaska Conservation Council v. U.S. Army Corp of Engineers*, 472 F.3d 1097 (9th Cir. 2006)……………………………………………………3

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).......................................3

## Constitutional Provisions

ALASKA CONST. Art. VIII, §1 ........................................................................18

## Alaska Statutes

AS 29.45.............................................................................................................15

AS 38.05.910.......................................................................................................18

AS 43.20.............................................................................................................15

AS 43.55.............................................................................................................15

## Federal Statutes, Executive Order, Rules of Procedure

16 U.S.C. § 3101 ..............................................................................................2, 17

42 U.S.C. § 6501 ..................................................................................................2

42 U.S.C. § 6503(b) ..........................................................................................20

42 U.S.C. § 6504(a) ..........................................................................................20

42. U.S.C. § 6504a(a). ......................................................................................20

42. U.S.C. § 6504a(b) .......................................................................................20

42 U.S.C. § 6506a ..............................................................................................19

FRAP 8(a)(1) & (a)(2) ....................................................................................4
Fed. R. Civ. Pro. 26(a)(2) ...............................................................................8
Executive Order 13990, 86 Fed. Reg. 7037 (Jan. 25, 2021) ..................................12

## TABLE OF EXHIBITS

| Exhibit No. (Dist. Court Doc. Nos., 3:23-cv-00058-SLG; 3:23-cv-00061-SLG ) | Description |
|---|---|
| 1 (52-1;59.1 ) | Declaration of Derek Nottingham, (Mar. 24, 2023) |
| 2 (52-2; 59.2 ) | Declaration of Catherine Muñoz (Mar. 24, 2023) |
| 3 (52-3; 59.3) | Declaration of Anthony Strupulis, (Mar. 24, 2023) |
| 4 (184-1; 204.1) | Declaration of Catherine Muñoz (Nov. 29, 2023) |
| 5 | Excerpts Willow FSEIS |

## INTRODUCTION

The State of Alaska ("State") opposes the Plaintiffs-Appellants' respective motions for an emergency injunction pending appeal.[1] The Plaintiffs appeal the district court's dismissal of their respective challenges to the Bureau of Land Management ("BLM") approval in the Record of Decision ("ROD") for the Willow Master Development Plan ("MDP") and related federal agency actions allowing ConocoPhillips Alaska, Inc. ("ConocoPhillips") to begin construction on the Willow Project in the National Petroleum Reserve in Alaska ("NPR-A").

The ROD followed an extensive public process and robust review from a Supplemental Environmental Impact Statement ("SEIS").[2] The district court's decision on merits of the Plaintiffs' challenges contained detailed analysis on each claim based on the record and considerable existing authority.[3] With its familiarity on the record and following review of the significant briefings and declarations filed, the district court denied the Plaintiffs' requested injunctions.[4] The district

---

1 *Sovereign Iñupiat for a Living Arctic, et al. v. BLM*, ECF No. 10.1 (No 23-3627) ("SILA's Motion"); *Center for Biological Diversity, et al. v. BLM*, ECF No. 10.1 (No. 23-3624) ("CBD's Motion")(collectively "Plaintiffs' Motions"). The State submits this combined opposition for the convenience of the Court and parties.

2 SILA Motion, ECF No. 10.2; CBD Motion, ECF No. 10.22 (excerpts).

3 SILA Motion, ECF No. 10.25; CBD Motion, ECF No. 10.24; ("Decision").

4 SILA Motion, ECF No. 10.33; CBD Motion, ECF No. 10.26; ("Order").

court found that the Plaintiffs did not demonstrate any requisite element to support the extraordinary relief requested. *Id.* The Plaintiffs, Sovereign Iñupiat for a Living Arctic, *et al*., ("SILA") and the Plaintiffs, Center for Biological Diversity, *et al*., ("CBD") (collectively "Plaintiffs") were denied injunctive relief repeatedly[5] before the district court and now again seek that same extraordinary relief before this Court.

The district court correctly found that: (1) the Plaintiffs' did not show a likelihood of success on the merits and had not even raised serious questions on merits; (2) the Plaintiffs' failed to meet their burdens to show that irreparable harm to their members would result from ConocoPhillips' activities pending appeal; and (3) the balance of equities and public interest did not support the Plaintiffs' requests for injunction pending appeal. Order.

The State is a sovereign state and has unique recognized legal rights under the Naval Petroleum Reserves Production Act, 42 U.S.C. § 6501, *et seq.* ("Reserves Act") and the Alaska National Interest Lands Conservation Act, 16 U.S.C. § 3101 *et seq.* ("ANILCA") at issue in this case. The State has participated for years in issues surrounding the Willow Project, including as a cooperating agency in the multiple, detailed, and prolonged environmental impact statements

---

[5] The district court denied the Plaintiffs' motions for preliminary injunction earlier in the year. SILA Motion, ECF No. 10.23 ("Order Re Motions").

underpinning the Willow Project approvals at issue here. The State is also a neighboring landowner and land manager and a major regulatory and taxing authority.

The State contributes significant expertise on Arctic oil and gas development, subsistence, socio-economic issues in Alaska, and other public interest views to aid this Court in its consideration of the balance of equities and public interests at stake. As it did in the district court, the State embraces the declarations of the State's Acting Commissioner of Labor and Workforce Development, the State's Director of the Division of Oil and Gas within the Department of Natural Resources, and the State Pipeline Coordinator within the Division of Oil and Gas explaining again why an injunction is contrary to substantial public interest.[6]

## STANDARD OF REVIEW

Injunctive relief is "an extraordinary remedy that may only be awarded on a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). This Court employs the four-element test for a preliminary injunction when considering whether to grant an injunction pending appeal. *Southeast Alaska Conservation Council v. U.S. Army Corp of Engineers*,

---

6 State's Exhibits 1 - 4.

472 F.3d 1097, 1000 (9th Cir. 2006). To be granted such an "extraordinary remedy", the Plaintiffs must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm without preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter* 555 U.S. at 22. The balance of equities and public interest elements merge together in this case because the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The posture of this case also advises restraint against any exercise of such an extraordinary remedy in equity as the Plaintiffs seek. This is not a case where the district court has yet to rule on the merits or did not rule on all the claims raised. The district court's Decision was comprehensive in its analysis of the Plaintiffs' claims and reasons for dismissal. Moreover, this is not even a case where the district court issued a cursory denial of a motion for injunction pending appeal. Here, the district court Order addressed all the requisite elements for an injunction pending appeal. Accordingly, the district court's factual findings, particularly with regards to the failure to show irreparable harm and the balance of equities and public interest did not support injunction, should be considered with deference consistent with the requirements in the appellate rules and the district court's familiarity with the factual record. Order; s*ee,* FRAP 8(a)(1) & (a)(2).

## ARGUMENT

The State maintains that the Plaintiffs have failed to meet the demanding burdens to establish any of the elements for the extraordinary relief requested. To avoid duplication, due to the truncated briefing timeline, and to best exhibit the State's expertise and public interest outlooks, the State focuses its arguments on the Plaintiffs' failure to show irreparable harm and that the balance of equities and public interest is contrary to the injunctive relief requested.

### A. The Plaintiffs fail to demonstrate irreparable harm.

#### *1. The Plaintiffs fail to demonstrate irreparable harm to subsistence.*

The Plaintiffs fail to demonstrate irreparable harm to any individual Plaintiff member from the anticipated construction activities during the pendency of these appeals. SILA's Motion relies on the Declaration of Mr. Kunaknana for its arguments that existence of infrastructure is an irreparable harm by "permanently converting areas that are important to him into industrial zones where he can no longer hunt and fish." SILA's Motion at 9.

The district court correctly reviewed Mr. Kunaknana's declaration in the context of the scope of the anticipated construction activity during these appeals, the legal standards required for a showing of irreparable harm, the SEIS and ROD mitigation measures, and the competing narratives from other Nuiqsut subsistence users. Order at 8 -19; *Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 544-55

(1987)(explaining that a presumption of irreparable damage is contrary to traditional equitable principles and that the balance of harms process can address environmental impacts.).

The district court Order noted that "Mr. Kunaknana's claims of irreparable harm are similar to those he made in support of the preliminary injunction." *Id.* at 12 n.47. SILA's Motion again fails to demonstrate harms to Mr. Kunaknana's subsistence uses as specific, immediate, substantial, permanent, and causally related to the construction during these appeals. The State disagrees with the characterization of the construction pending appeal, primarily gravel roads, as creating an "industrial zone."

While the construction activities anticipated pending appeal are more substantial than the winter construction season earlier this year, construction of eight miles of gravel road during the appeal period is not considerably different in impacts from the two miles of gravel road extended earlier this year when considered against the massive range of the Teshekpuk Lake Caribou Herd and the size of the Reserve. Order at 14 n.58 & 24 (noting from one of ConocoPhillips' declarations that the entire project area overlaps with less than one percent of the Teshekpuk Caribou Herd Winter Seasonal Range and "204.1 acres of land will be disturbed in the Reserve (0.000879 percent of the Reserve.)".

The Plaintiffs' arguments based on the SEIS are likewise insufficient

because it cannot establish irreparable harm to them individually and the SEIS noted competing offsetting views and reports on gravel roads. Exhibit 5 at 1 (suggesting that the increasing use of roads has translated to increased harvests in the area west of Nuiqsut).

The district court Order did not address the CBD Plaintiffs' arguments for irreparable harm from the "study" by Kofinas, Gunn, and Russell because the CBD Plaintiffs did not submit the document as a sworn declaration, it was not in the administrative record, and it was not publicly available. Order at 25 n.51; CBD Motion, ECF 10.27 (Order denying motion for reconsideration). The CBD Plaintiffs' arguments and inclusion of the document with sworn declarations from the authors should be similarly disregarded by this Court due to the failures identified by the district court. CBD's Motion, ECF 10.2.

The inclusion of the now sworn declarations at the end of the document raise additional concerns about the nature of the document and reliability of the "study." *Id.* at 26- 28. Each of the authors declared under penalty of perjury to the truth of the entire document without any limitations or references to personal knowledge or experience. *Id.* The document does include a description of each of the authors. *Id.* at 3. None of the descriptions include specific examples of personal experience, work experience, or research expertise on the Teshekpuk Lake Caribou Herd in particular or subsistence practices in Nuiqsut in particular. *Id.* The second page of

the document notes that in addition to the authors and title that it should be cited as a "Report of Teewinot Institute." *Id.* at 2. No information is disclosed about the nature or affiliations of this institute and the relation of the authors to the institute. *Id.* The document appears to be entirely prepared for litigation, but is lacking any information regarding the renumeration received by the authors for its preparation. The document does not meet the evidentiary requirements for an expert report under the federal rules. Fed. R. Civ. Pro. 26(a)(2).

Instead, the document is a derivative sporadically referenced opinion piece that cannot establish any likely irreparable harm to caribou, subsistence, or the Plaintiffs. The document should not be regarded by the Court as any sort of factual declaration or given weight as an academic study. The document gives cursory details as to the process employed by the three authors to generate their conclusions. *Id.* at 4. The document explains that the "assessment" is based on review of some peer reviewed publications, but not that the document itself has been subject to any such review process. *Id.* The document also references "Indigenous knowledge" but does not purport to include any recent interviews with residents of Nuiqsut or even review of the declarations in these cases. *Id*.

The document includes vague assertions of "experience elsewhere" and other opinion leaps and characterizations parading as scientific conclusions. *See, id.* at 6 and 10 (speculating from a series of studies spanning different years and

different areas to conclude that the noise and traffic caused by Willow construction will be similar to that of an unnamed "oilfield area" at some unspecified time and thereby Willow construction "will also lead to higher calf mortality" at some unspecified time and of no specific duration.).

Many statements in the document appear to be missing citations. One citation found in the document body on review of the reference list appears to reference a study of responses by wildebeest, an animal not found in Alaska. *Id.* at 8 & 21. The level of critical scientific analysis and review underpinning the document is further called into question by these errors.

As such, the Plaintiffs' Motions fail to establish irreparable harm of an imminent and substantial scope to any individual Plaintiff member due to the impacts on the construction activities anticipated during the pending appeal timeframe.

*2. The "bureaucratic steamroller" theory fails to demonstrate irreparable harm.*

The CBD Plaintiffs cannot demonstrate irreparable harm based on unfounded speculation of "bureaucratic steamroller" theory. CBD's Motion at 21-22. The district court Order did not address this argument because the CBD Plaintiffs did not present it to the district court in their motion for injunction pending appeal. Here, the CBD Plaintiffs offer no explanation to this Court as to why their motion for injunction pending appeal before the district court did not

include such an argument.

This attempt to circumvent the role of the district court on factual findings is particularly noteworthy when the CBD Plaintiffs did make that argument before the district court at the preliminary injunction motion stage earlier in the year. Order Re Motions at 30. At that time, the district court appropriately "assume[d] that BLM would comply with the law" in the event of a later remand. *Id.* at 30. The district court then reasoned from this Court's opinion in *Northern Cheyenne Tribe v. Hodel*, 851 F.2d 1152 (9th Cir 1988). Order Re Motions at 30.

In *Northern Cheyenne Tribe*, this Court considered a district court order that amended an injunction following a decision finding violation on proceeding with leasing when the environmental impact study failed to analyze impacts to the Tribe. 851 F.2d at 1154. The amended injunction allowed for remand without vacatur during a SEIS process and allowed a company with one of the leases at issue to "go forward with mining on its leases" subject to a caveat for halt in the event of a finding of the Secretary of "significant socioeconomic impacts." *Id.* at 1555. This Court explained that "bureaucratic rationalization and bureaucratic momentum are real dangers, to be anticipated and avoided *by the Secretary*." *Id*. at 1557 (emphasis supplied). This Court then stated that "We assume the Secretary will comply with the law." *Id.* While the Court in *Northern Cheyenne Tribe* ultimately remanded on other grounds, "bureaucratic steamroller" theory did not

support irreparable harm for injunctive relief. *Id.*

The CBD Plaintiffs assert no facts as to why the Secretary here or the Federal Defendants would be "at risk" of violating the judicial assumption of compliance with the law following any remand. Moreover, the CBD Plaintiffs' factual contentions appear to be based on the additional construction work that will occur during the pendency of this appeal. CBD's Motion at 22. Given that no oil will be produced or transported during this appeal and that construction activities are of similar character (roadbuilding, gravel mining, boat ramps) to those considered by the district court earlier this year, this Court should similarly decline the CBD Plaintiffs' theorization of irreparable harm. Order Re Motions at 30; Order at 10-11(comparing the upcoming construction with the construction activity that concluded in May 2023 and noting that ConocoPhillips will not produce any oil or gas and the absence of construction in the Teshekpuk Lake Special Area during the upcoming winter season.).

This "bureaucratic steamroller" argument is particularly galling from the State's perspective. First, the Federal Defendants have already experienced remand on the Willow Project. The SEIS and ROD reflect consideration of the issues on remand and far more analysis than was required to address those issues. CBD's Motion, ECF 10.21 at 4 ("This Final Supplemental EIS addresses the District Court's remand decision and expands the range of alternatives analyzed.").

Second, the notion that these Federal Defendants could be at "risk" for "steamrolling" development in Alaska and might not consider other options on any remand is irrational. *See, Friends of Alaska Nat'l Wildlife Refuges v. Haaland*, No 20-35721, 2023 WL 4066653, (9th Cir. June 15, 2023)(dismissing appeal following a unilateral memorandum from the Secretary "withdrawing" from a land exchange agreement with an Alaska Native Corporation challenged on environmental claims.); Executive Order 13990, 86 Fed. Reg. 7037 (Jan. 25, 2021)(directing the Secretary to place a "moratorium" on implementation of the Coastal Plain Oil and Gas Leasing Program due to "alleged legal deficiencies."). Accordingly, the Plaintiffs have failed to clearly demonstrate a "steamrolling" risk even as a matter of speculation; and therefore, they fail to meet the much higher standard for irreparable harm.

**B. An injunction pending appeal is against the substantial public interest.**

*1. Injunction would cause significant economic harms to governments, communities, and private parties contrary to the public interest.*

The State's Acting Commissioner of Labor and Workforce Development, Catherine Muñoz states "delay to the Willow Project from a short term injunction or injunction pending appeal would have real impacts to employment outcomes for Alaskans, especially for Alaskans living near the Willow Project, including the residents of Nuiqsut." Ex. 4 at ¶ 2, Dec. Muñoz. The Commissioner explains that

"[o]il and gas jobs continue to play a vital role in Alaska's economy as they provide substantial revenue to the state and high-paying jobs in a region where the cost of living is amongst the highest in the state." *Id.;* Ex. 2 at ¶ 4, Dec. Muñoz (explaining recent data showing growth of oil and gas wages with even support wages growing to $123,375); Ex. 4 at ¶ 4, Dec. Muñoz ("Specific to the North Slope Borough, oil and gas jobs paid average annual wages of $156,372 in 2022 compared to the overall average in the Borough of $115,260."). The Commissioner expounds on the importance of the significant training opportunities that the Willow construction seasons generate as follows: "Willow's employment will also include significant training opportunities for North Slope Borough residents, and other Alaskans, further broadening their skills capacity for future employment opportunities after Willow construction season has ended." *Id.* at ¶ 2. Commissioner Muñoz described that from 2015 to 2022 "[j]obs have fallen steeply…in the North Slope Borough" and that "increased employment activity adds critical funding for local families and supports the local economy." *Id.* at ¶ 3.

The district court appropriately considered this recent declaration from the Commissioner as well as declarations from the other Defendant-Intervenors of the jobs and revenues that would be lost from an injunction pending appeal. Order at 21 and 22; *see*, Order Re Motion at 34-36 (finding the economic interests from the more limited construction activity earlier in the year to be "substantial"). The

district court Order reasoned from the guidance by this Court's *Earth Island Institute v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010), that the court needed to "balance the environmental and subsistence harms that have been asserted if the 2023-2024 winter construction activities proceed against the economic and other harms that would occur if those activities are enjoined" during the appeal. Order at 20.

The Plaintiffs' Motions do not appear to dispute the district court's ability to balance the interests, just the particular balance chosen. SILA's Motion at 23; CBD's Motion at 22. The Plaintiffs' arguments on equities harken back in tone to the rejected "presumption" of irreparable harm due to environmental impacts. SILA's Motion at 23; CBD's Motion at 24; *Amoco*, 480 U.S. at 544-55. Moreover, none of the case authorities cited by the Plaintiffs in support of environmental harms tipping the balance against economic harms for injunctive relief involved remote communities in post-pandemic recovery with high costs of living and limited employment and training opportunities and anticipated government revenue to the scale of the Willow Project.

The Plaintiffs' Motions without factual support characterize the loss of jobs and economic benefits from an injunction pending appeal as being "deferred" or "postponed." The Plaintiffs' Motions again fail to recognize the many layers of

economic harms from the requested injunction and the actual employment opportunities and outcomes in Nuiqsut and Alaska.

The Plaintiffs' cursory economic interests assessments also fail to account for the loss of federal, state, and local tax revenues and other fees that would be due over the next two years from the construction activities, in addition to the billions foregone in the event of project loss. The increased activities from construction pending appeal will impact property tax revenues, corporate income tax revenues, and local bed and other excise tax revenues that the federal, state, and local governments would receive during the pending appeal. AS 43.56; AS 43.20; AS 29.45.

The State disagrees with the Plaintiffs' characterizations of benefits from the Willow Project as merely being delayed from an injunction pending appeal. The benefits overall would be at significant risk and even if just "delayed" would still be lessened due to the loss of time and the uncertainties and inefficiencies created by stops and starts of projects with long lead times.

The Willow Project will require additional governmental approvals and review; some of which will involve highly technical expertise. Ex. 3 at ¶ 6, Dec. Strupulis (describing the "rigorous technical and financial 'fit, willing, and able' analysis" on pipeline construction applications with the State.). The State's Director of the Division of Oil and Gas, Derek Nottingham, explained that delay in

projects creates uncertainty and "an inability for these organizations to plan effectively in hiring qualified people, adequately managing their existing and future accounts, and generating quality products." Ex. 1 at ¶ 4, Dec. Nottingham. An injunction pending appeal would be harmful to public administration processes as well as private vendors involved in the project due to potential loss of institutional knowledge and expertise, difficulties in retaining or recruiting staff, other resource needs or opportunities that might divert currently employed resources, and other planning difficulties might occur. These inefficiencies could result in increased expenses and timelines for the State as well as other stakeholders in the Willow Project. Project starts and stops carry costs and risks beyond the mere postponement of benefits contemplated by the Plaintiffs.

*2. Injunction is contrary to the public interest in welfare and safety.*

The State as a sovereign has interests in promoting the health, safety, and welfare of its citizens. The district court Order considered, once again, the competing interests of subsistence users and found that the Plaintiffs had not established irreparable harm to their members due to the construction activities. Order at 23; Order on Motion at 38 (considering declarations from subsistence hunters that gravel roads and boat ramp would provide "faster and safer access to subsistence resources"). The district court noted the declarations from Defendant Intervenor Kuukpik Corporation arguing that "halting construction activities

pending appeal would prevent the construction of subsistence ramps and gravel roads that most subsistence hunters and fishers view as highly beneficial to these activities." Order at 21. The State agrees that the boat ramps and gravel road may improve safety and health of State of Alaska residents by improving access to subsistence resources, enabling subsistence resources to be obtained more safely, and helping rural communities maintain their populations and subsistence lifestyles. The Plaintiffs' Motions do not address these safety and welfare benefits from the construction planned during the appeal. The SILA Motion in a footnote argues that the injunction, similar to impact on jobs in its view, would only delay the benefits to subsistence users from roads. SILA's Motion at 21 n.10. This argument fails to account for the safety and welfare nature of improved access to subsistence resources for many users that elevates the harm from an injunction outside of mere "delay" of benefits.

In ANILCA, Congress acknowledged that the national interests in environmental and other values of these lands existed while admonishing that those protections and values should not deprive the "State of Alaska and its people" of economic and social needs. 16 U.S.C. § 3101(d). The district court Order appropriately recognized these interests in its balancing of equities and public interests. The district court stated:

> Considering that last year's gravel road has already aided in the successful harvesting of caribou by many subsistence hunters, the

> construction of subsistence ramps and additional miles of gravel road, in addition to the employment opportunities Willow will afford, would help ensure an "adequate opportunity for satisfaction of the economic and social needs of the State of Alaska and its people," which is a stated purpose of ANILCA. Order at 26.

Accordingly, an injunction pending appeal would be contrary to public health and safety due to the subsistence and safety purposes of the subsistence ramps and road pullouts to be constructed.

*3. Injunction is contrary to the public interest in energy security and the purposes of the Reserve.*

The State has constitutional and statutory interests in the utilization and development of the State's oil and gas resources. Alaska Const. Art. VIII, § 1; AS 38.05.910. The Willow Project's target reservoir is the Nanushuk formation that is productive on State lands as well as the Reserve. Ex. 1 at ¶ 6, Dec. Nottingham. A delay in the Willow Project due to the requested injunctions "generates the potentiality for ineffective or limited development of the Nanushuk formation." *Id.* Thus, delay due to an injunction could result in informational loss that assists in the responsible development of State lands and could create economic loss for the State. *Id.* Oil produced from the Willow Project, and any other projects that produce from the Nanushuk formation, would be shipped down the Trans-Alaska Pipeline System ("TAPS").

TAPS is critical national energy infrastructure to meet the energy demands in Alaska, Washington, California, and other portions of the U.S. West Coast. Ex.

3 at ¶ 8, Dec. Strupulis. The delay due to any injunction would be contrary to the purposes of the Reserves Act and important domestic energy security needs.

The purpose of the Reserve Act was to protect the Navy's and then the nation's overall energy security needs. 42 U.S.C. § 6506a. This purpose still endures today. The district court Order considered the uniquely aligned amicus brief filed by the Alaska Congressional Delegation and the Alaska State Legislature that argued that development of the Reserve "strengthens national security and decreases dependence on foreign energy." Order at 25. The district court Order found that "allowing the 2023-2024 winter construction activities to proceed would be consistent with the congressional directive in the [Reserve Act] to the Secretary of Interior to conduct 'an expeditious program of competitive leasing of oil and gas in the [Reserve]." Order at 26; 42 U.S.C. § 6506a.

The Plaintiffs' Motions attempt to refashion the purpose of the Reserves Act into a conservation statute. SILA's Motion at 20 -21; CBD's Motion at 24. The SILA Motion argues that the district court Order "improperly focused only" on the leasing program in the Reserve Act and "ignored the countervailing statutory mandates for the protection of land and resources." SILA's Motion at 21. The actual statutory language does not support the Plaintiffs' assertions that the protections contemplated under the Act are "countervailing statutory mandates" equal to the mandate for expeditious leasing and general development purposes of

the Reserves Act. The statute relied in the SILA Motion as a "protection" mandate states "the Secretary of the Interior may promulgate such rules and regulations as he deems necessary and appropriate for the protection of such values in the reserve." SILA's Motion at 20; 42 U.S.C. § 6503(b); 42 U.S.C. § 6504(a)(providing that the Teshekpuk Lake area ... "shall be conducted in a manner which will assure the maximum protection of such surface values to the extent consistent with the requirements of this Act for the exploration of the reserve." ); 42. U.S.C. § 6504a(b) (including a "shall" but also subject to "as the Secretary deems necessary or appropriate" and qualified to "mitigation of reasonably foreseeable and significantly adverse effects."). The permissive and qualified language in those statutes stands in contrast to clear mandatory directive that "[t]he Secretary shall conduct an expeditious program of competitive leasing." 42. U.S.C. § 6504a(a).

Moreover, the Plaintiffs are incorrect that the district court Order did not consider protections contemplated under the Reserves Act. The district court Order had already considered the Teshekpuk Lake special area in the irreparable harm analysis and noted twice that "no construction in the TLSA is planned before January 2025." Order at 11 &17. Accordingly, the district court had no need to address Teshekpuk Lake area again since the area would not see construction pending these appeals.

## CONCLUSION

The Plaintiffs have failed to meet the heavy burdens for the harmful and drastic injunctive relief sought. The injunction requested in contrary to significant economic, subsistence, public welfare, and energy security interests. The injunction requested should be denied.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 11, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/Mary Hunter Gramling
Mary Hunter Gramling
Chief Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

I certify that:

(i) This document uses proportionally spaced, 14-point, roman style font and therefore complies with the typeface style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6); and

(ii) This document contains 5152 words.

/s/Mary Hunter Gramling
Mary Hunter Gramling
Chief Assistant Attorney General